Peralta in Ray Peralta. Good morning, your honor. My name is Ronald McNeil, and I represent appealant Mr. Peralta, and I would like to reserve three minutes for rebuttal. Okay. Gunners, we're here today seeking a declaration that the right to cure has not terminated for Mr. Peralta. Sir, let me ask you this question. I could not find any law on this. But your client, after he defaulted, there was some negotiation back and forth with the creditor. And then he entered into a basically a settlement agreement in which he stipulated that upon default, if there was another default, that he would basically confess judgment, that he would take a default judgment. He continued in possession pursuant to that settlement agreement, then defaulted, and then defense transpired, as God is aware of today. But it struck me, why didn't he waive the protection of 362 in the automatic stay when he entered into that settlement agreement? I know that's being argued, but it just struck me that he could have filed for bankruptcy rather than entering into the settlement agreement. He opted to enter into a settlement agreement. And basically, I don't think the confession of judgment was part of it, but it may well have contained a confession of judgment. But in any way, he conceded that he would take a default judgment. Seems to me that he's waived any protection he otherwise had under the automatic stay at that point. Maybe I'm misunderstanding the court, but that settlement happened before the bankruptcy file. Right, right. Right. But I'm wondering why he didn't waive the protection of the automatic stay that you are now relying upon. By agreeing that, oh, I'll take a default judgment, if I default again, look, don't kick me out. Let me stay here. If I default again, possession is yours. I'll take a default judgment. He could have, and a few months later, after he defaulted, he rushed in and filed for bankruptcy and then sought protection of the automatic stay. Well, I wasn't prior counsel in the Court of Common Pleas matter, Your Honor, but I think that is not completely correct, what happened. Our understanding is that the agreement was made in November of 2011. Recon alleged a default in 2015. They reached a stipulation for him to move forward. That stipulation was the settlement agreement? Yes, Your Honor. Okay, okay. And then in 2018, they alleged that he made another default. That's what we're contesting. So, I see where you're going with that. I think there's another threshold issue both parties skip over. You're saying there's a default here, a prerequisite for 1322C1 relief is there has to be a default with respect to or that give rise to a lien. So, you know, I think that the installment contract gives rise to a lien, and I think that we can categorize this as a default, but there's not really a lot of law out there on this. Have you found any authority that supports characterizing it that way? Yes, Your Honor. There's all the bankruptcy courts that have dealt with this have said it's a secure device. And the Pennsylvania Supreme Court and the Superior Court of Pennsylvania have said that installment land contracts ought to be treated as mortgages in the contract. So, we treat it as a lien. Yes. In terms of the default, how do we determine this is a default? Just the dictionary definition, he failed to pay what was due, therefore, that's enough of a default for the bankruptcy code? No, there's monetary monies that are due. That's what we see as a default. Okay. He's trying to procure, and what he's using this bankruptcy for is to pay off the contract. Right. And so, what he's done is filed a Chapter 13, which was confirmed that allowed him to pay off the contract. So, he's already paid off the contract. But didn't he file a Chapter 13 after he entered into this settlement agreement where he agreed that if he defaulted on a loan, he would voluntarily vacate the property? If he committed a default, yes. Right. And he did. Well, that's what the issue is, Your Honor. That's why we contested the precipice for a default. So, here's my concern. At that point, he's a squatter. He doesn't have a legal or an equitable interest in the property anymore. And, you know, when we think about, like, the gavel rule in Connors, like, when the gavel falls, then you no longer have the equitable right to the property. And so, that's why, for a foreclosure sale, that matters. So, isn't the equivalent here, you know, there's a judgment for possession. So, he doesn't have an equitable interest. He's just a squatter at this point. But that's not correct, Your Honor. If the gavel had fell, then he would be a squatter. The default judgment has not been finalized. It's on appeal. In the Commonwealth of Pennsylvania, you get to attack a default judgment. We have to take the state judgment as it stands now. If it gets appealed, maybe that will unwind things. But right now, it's like he doesn't have a right here. If it was final, we would agree with the court, Your Honor. But it's not. It's sort of like them saying, well, the bankruptcy court decided for Mr. Peralta. We shouldn't be able to challenge what the bankruptcy court said. Both bankruptcy court and the Commonwealth of Pennsylvania give you the right to appeal. And so, until that appeal is final, he's exhausted his right. Then we would agree with the court that he's detained. Are you challenging whether or not he was in default on the loan? Yes, Your Honor. That's a wrinkle. I thought it was a wish upon the default. I'm sorry, Your Honor. I thought it was a wish upon the default. I'm sorry, Your Honor. There was two parts to the default judgment, Your Honor. It was a money judgment for $41,000 and a judgment for possession. Right. Right. Which parts of those is he challenging? Both? We actually challenged both. But bankruptcy court said we can't challenge the $41,000. But the court allowed us to show proof of payments. That's why the amount due was not $41,000 but roughly $35,000. What was the status of his appeal? I actually think it has now been dismissed. Well, that clearly doesn't help you. Well, it was dismissed after the bankruptcy filing, Your Honor. Well, then we've got to take it as it stands. Right. Now, we can't consider policy. Obviously, we have to consider the law. And I've not dealt that much with installment land contracts, dealt exclusively in my prior life with sales for default. But it occurred to me that the result of what we do here, if we were to conclude that you were right, would really complicate things as far as lending goes because I'm imagining that the reason that installment land contracts are entered into is it allows the – it gives the lender more flexibility. It lowers the level of risk. It makes it easier for them to collect in the event of default. And they have the advantage of retaining title on the property that is the subject of the loan. So it may well be that persons who otherwise couldn't get loans or mortgages or would get them at a much higher interest rate are allowed the advantage of the loan. We could be really throwing a monkey wrench into that whole process if we were to say that installment land contracts would be treated the same as mortgages upon default in terms of bankruptcy filings in 362. Again, that's – we can't take that policy consideration into our decision, into effect. But it can't help but think that we may have unintended consequences if you were to win here. But we – but, Your Honor, we think the Commonwealth of Pennsylvania has already decided that for you. Pennsylvania passed the Installment Land Contract Act roughly in 1965. The Pennsylvania court, starting with Anderson, actually going back to 1895, a lynch decision, recognized installment land contracts. So this is baked into the wash in Pennsylvania. But the Collier-Bell financing mechanism, they make a great deal of sense. Yes. From the point of view of both borrowing and lending, they make a great deal of sense. Right. We're not saying that. Right. But we think that line of questioning takes away what Congress was trying to do in 1994. Congress says we know about all this stuff with the mortgages, but we want to amend the bankruptcy code so that homeowners get more options to possibly save their health. Right. Look, in an installment contract, there's not literally a foreclosure sale. What is the analog to a foreclosure sale? Why isn't it when there's a judgment? It's when there's a final judgment. We agree if there's a final judgment, that's the proper analogy. The problem we have is that this was a pending matter when he filed. Because he was in possession, it was a pending matter. So you're saying it's not enough to have the judgment for possession has to go all the way up through the appeals? Yes, because of Pennsylvania law, yes. Because that could take years. And meanwhile, the debtor would be in possession of a property and not paying on the loan. But that's why this one is different, Your Honor. He's paid off the contract. This also isn't the position you took in your brief. Well, the alternative position you took was the execution of a writ of possession. But you don't have any authority for that. Nothing turns on executing the writ and kicking them out. So why shouldn't we just focus on when the equitable interest transfers at the point of the judgment? And then if there's a reversal or something, we'll have to unscramble it. Well, because if there's going to be an analogy, Your Honor, we think there should be a final judgment. And by analogy, it would be, quote, unquote, one hour before the final judgment. That line should be somewhere between one hour before the final judgment and execution of the writ of possession. What we call a final judgment, the final judgment rule says you get to appeal a final judgment when the district court enters the final judgment. You don't say you get to appeal the final judgment once the Supreme Court is done with the case, right? We call it a final judgment when the one court is done with it, not when the whole court system is done with it. Well, I don't think that's what Pennsylvania law says. Part of bankruptcy code, we believe, is there's an interweaving between the federal law and the state law. There is. The other problem with the one hour rule, it doesn't work in terms of a judgment of foreclosure. You don't know when that's going to be. Under a mortgage foreclosure sale, you know when that hammer is going to fall. You know the time of the mortgage sale. It's scheduled. It's publicized. And you know when that is. You may not know until the minute because you don't know on that day when your property is going to be called and the bidding is going to end. But you basically know the day when that hammer is going to fall. That's not true with a judgment of foreclosure. You have no idea when it's going to be. It could be tomorrow. It could be a year from now. It could be three years from now. Maybe the judge who has the case will retire. Maybe the case will slip through the cracks and not get reassigned, in which case the thing goes on forever. It just doesn't work in the context of a judgment of foreclosure, number one. And number two, in the stipulation of agreement, and this is unique to this case, it seems to me that you've already agreed to a default judgment. You've already confessed, basically confessed judgment. I can ask you and your colleague, did the document contain a confession of judgment? I'm not sure they even use those things anymore. When I was doing this, you always got a confession of judgment. Was there a confession of judgment in the agreement? You could answer. Well, Your Honor, as part of the stipulation, there was, if he defaults, then they can move for a default judgment. But he never waived his right to contest. Part of what the Commonwealth of Pennsylvania has always been concerned about, and it became more of an issue after the mortgage crisis in 2007, was that we need to better protect the homeowners in the Commonwealth to make sure the mortgage companies and other lenders are not moving quickly to take people's homes. So we think the policy decisions have been made by Congress in the Commonwealth of Pennsylvania. Well, they told you to move quickly. They sort of gave you a forbearance, and then they allowed you to enter into this stipulation and basically said, we'll give you a second chance. If you can pay the contract as the payment should do after this, fine. Right. So they didn't move all that quickly on this. Well. Two years. About two years, wasn't it? Well, he was making, we still think he was making the payments. He was making the payments. Well, I don't know any creditor who wants to foreclose on a lien if the payments are coming in. Well, that's, no. The area we're talking about here in this part of the city. I'm sorry, Your Honor, but that is why they wanted to move. Remember, he owes them roughly $35,000. This house is worth approximately $310,000. That's why, that's their incentive to move forward. And so they're going to be unjustly enriched if the policy decisions made by Congress in the Commonwealth of Pennsylvania are not recognized by this court. How will they be unjustly enriched? They already have title to the property. How will they be unjustly enriched? They'll get, they'll get the right, they already have the right to possess, but they'll get the fact of possession. Yeah. And they can resell the property. Yes, for $300,000 plus. They don't give him anything back if you give them possession. Yeah. That's why Pennsylvania has said there's some equity building up. We're recognizing that this person is making payments all along. Technically, on the last payment, the title holder can say, you've defaulted. I now want my property back. And so that's why Pennsylvania has provided these protections to protect the homeowners. So you're saying the loan was not in default. That's what you're saying to us. In essence is what we're saying, Your Honor. That's what we were trying to challenge and state. Why did you enter into the settlement agreement if it wasn't in default? There are two issues of default, Your Honor. We're not contesting the 2015 default. Right. We're contesting the 2018 default. You're saying after the settlement agreement, you began making payments. Correct. On the loan. Correct. And at that point, they already had the judgment of possession. No, no. The judgment of possession happened in 2018. While you were still making payments. Correct. Correct. That's what we're contesting. We're contesting the 2018 default. Alleged default. And the bankruptcy court, I'm sure, had all this in front of it. Yes. And that's why the judge looked at the bankruptcy history, looked at the facts of the case, and made that decision based on this court's counter decision, looking at the fact that Congress said Roach and Perry are not good law. That's what they're doing here, Your Honor. They're going back to your court's decision in 1987 and 1991, where you said if there's a judgment, there's no cure. And that has changed. Congress said that needs to change. And Congress changed that. The mortgages. The Commonwealth of Pennsylvania. The Pennsylvania is saying installment land contracts are mortgages. We've cited the cases in footnote 38, I believe it's 36 and 38. But the language of 1332, as we said, it just doesn't work if you apply that to an installment land contract. Because the procedure is very different. As I said, you don't know when the gavel is going to fall. And the mortgagee already has the title. It doesn't need the gavel to fall to give it the right to transfer title. It already has the title. Right. In the context of an installment land contract. Maybe this is an artful way of drafting. But it seems on the face of the statute, which is what we have to go by, Congress did not mean to include installment land contracts within the scope of the remedies included in C1, when the 1994 amendments were passed. It doesn't work. It just doesn't work. How would you time it? What would be the deadline? What would be the analogy to one hour before the fall of the gavel in the context of a mortgage foreclosure sale? You said before it would be the entry of the judgment of possession. How do you know when that's going to be? Well, you have to do it. At the end of the day, Your Honor, you're going to look and see when did the appropriate court make the stamp. If they made the stamp at 105, you had to do it. If you waited until 1230, you're too late. Yeah, it's already too late. Once you look at the judgment in the docket, it's too late. Correct. The debtor does not know when the time's going to expire. It can only know when the time has expired. But looking into the future, it can't tell when the clock's going to strike. I'm sorry, Your Honor, but you can. And it happens with mortgages also. We've had cases where the person files the bankruptcy, but there's a question of was it an hour before the gavel went down at the sheriff's sale? And if it was within the hour, they lose out. Looking backwards, you can do that. But prospectively, the debtor is trying to figure out do I still have time to cure or not? Right. In the mortgage context, you know the date of the sheriff's sale, and you can assume sometime on that day, the gavel's going to fall with the foreclosure sale. You can talk about an hour, which is kind of a ridiculous term to use, but that's what we have. We have an hour before the gavel falls. At least you know the day when the gavel's going to fall. With a judgment of possession, you don't know when that gavel's going to fall. As I said before, it could be tomorrow. It could be next week. It could be two years from now. It could be five years from now. You just don't know because you don't know when the court's going to enter the judgment. It's not scheduled. It's not a set day. It simply doesn't work. That's why it seems to me 1332, you can't squeeze a mortgage foreclosure. You can't take a mortgage foreclosure scheme and squeeze into that an installment land contract scheme. It just doesn't fit. But Pennsylvania says it does. I understand. That's why we're making the argument there needs to be some interweaving with the federal law and the state law because Pennsylvania has recognized it does. Well, the same thing is true with mortgages. We understand your argument. Thank you, Your Honor. Thank you. Mr. Shirk? I'm sorry, I think I got the wrong question. Good afternoon. May it please the Court, Joseph Kerrigan for the appellee. Okay. Recon International. Okay. We would ask that this Court affirm Judge Diamond's December 4th order stating that the appellant had no equitable or legal rights in the property of 297173 Armingo Avenue. Even though he paid almost all his installments? Yes, because he initially, if we go back to 2015, he defaults on the contract. Then we file a lawsuit December or February 1st, 2015. Okay. So he still has an equitable interest after defaulting on the contract? At that point he has an equitable interest. When does it end? It ends with the state court judgment entered against that terminates that equitable interest. Mortgage, Pennsylvania law recognizes installment land contracts as not executory contracts, but as security devices. But they're not mortgages, because with the mortgage, the 1322C, whatever, that ends at the sheriff's seal. There's no sheriff's seal. So does 1322 even fit then? No, it doesn't. It doesn't, because he does not have a property interest when he comes into bankruptcy court. Under Section 541A, it says you have to have legal or equitable title. Okay. But he has an equitable interest. He has an equitable interest that's cut off, though, Your Honor. Okay. And it's cut off. And it's cut off as soon as the state court enters the judgment. That's what, yes, that's what the Belmonte case says. That's what Roth says. That's what Butko says. I mean, that's, you know, to suggest that the bankruptcy court suggested that it's up until he's physically thrown, launched out of the property, that one can still come into bankruptcy court and cure under 1322, which flies in the face of what Congress did in 1994, saying that under a mortgage it ends at a sheriff's seal. Well, we don't have that sheriff's seal here. So the analog would be the entry of a judgment. And now as far as so that was entered on the 26th of July, 2018, pursuant to that stipulated settlement that the parties entered into on June 1st. He had 40 days of a notice period. He didn't pay his taxes. He said he would pay everything. He acknowledged that he was in default of the original agreement. Was that what the default came in? Because I was. Yes. So the principal and interest were being paid with the taxes that were defaulted. It was. Yes. Because he agreed that he was going to pay the taxes. He's going to pay the interest. He was going to pay everything. And he and he acknowledged that if he defaulted on any of those, we we could enter a judgment for money and possession against him. But the taxes were initially as part of the payment calculated. No. No, that was separate. And he never raised that. He so we had to give him 30 days notice that the tax bill was due when he had he had 30 days to cure. That was pursuant to the agreement that the parties entered into. He didn't do anything in that 30 days. Then we had to give him another 10 day notice saying, look, you didn't cure in the 30. You got 10 more days. And after that, we may be able we will enter that default, that judgment stipulated judgment, not a default judgment. Really. What do you make a stipulated a stipulated judgment? And he never he never did anything. And so we entered it. What do you make of counsel's argument with respect to the appeal? I'm sorry. What do you make of counsel's argument with respect to the appeal? He took from the judge. He he filed an appeal and he filed bankruptcy the same day. It was essentially he was forum shopping. He was trying to stop it somehow. He didn't. He did not file one slip of paper as far as an appeal. It was dismissed by the by the Superior Court for no activity. And as far as as far as the finality of a judgment, it is the state court judgment. And the Turner case that we provide in our brief and also Judge Diamond relied on says, you know, it's a state court judgment. That's the final judgment unless or until it's overturned by a superior court. And that would even be the case while the case is being litigated in the superior court. This case was never litigated in the superior court. He what he did was he filed a motion. He, being previous counsel, filed a motion with the Court of Common Pleas to the petition to open the judgment. And that went to Judge Glazer in the Commerce Course. I mean, we laid this out in our appendix to the supplemental appendix that we that we supplied. And Judge Glazer denied it. He said it was contract law. You you negotiated this and you were given every benefit of the bargain. You just didn't do it. And then and then he filed the writ of possession was filed on the 30th of July, was served on him. And the Philadelphia sheriff told him in 21 days you're being removed. And during that time, he filed a petition for reconsideration of the Court of Common Pleas judgment. And that was denied. And so the next day he filed the Chapter 13 bankruptcy and he filed the he filed the superior court appeal. He did nothing with the superior court appeal and it was denied. So that's the state court judgment is the final judgment. And when he came in the court, as Judge Diamond said, if you look at under Section 541, he doesn't have a legal or equitable right in that property at that point. So he cannot use. It was really the cure provision, Your Honor, that he was that he was really trying to use in the bankruptcy court to cure the default. But that but his his interest had been cut off at that point. That's all I have, Your Honor, I think. Yes. Thank you very much, Mr. McGill, to reserve some time. Thank you. Your Honor, if I may, just two points. One to the. So glad you didn't say two quick points, two brief points. Two quick points, two brief points. It's never quick, it's never brief. So maybe yours will be quicker. Under installment land contracts, we're citing the cases in footnote 33 and 34, Your Honors. And also we would the U.S. District Court relied on the Belmonte case to make the determination that there was a cutoff with the entry of the default judgment. And we argue in footnote 41 that Belmonte is distinguished from our case because in the Belmonte case, the court did not find that there was an installment land contract involved. Our case, there is an installment land contract. And we think this court should look at Pennsylvania law, 68PS901, and compare that with case law of Pennsylvania to interweave federal law, which was changed in 1994, to find out, yes, Pennsylvania, the Commonwealth of Pennsylvania wanted installment land contracts protected the same way as mortgages. And because of that, Mr. Peralta should be allowed to return back to bankruptcy court. He's paid recon and his other creditors, and he should be permitted to get a discharge. Including the taxes? Taxes have been paid? Yes, Your Honor. Everything has been paid. He pays the insurance, he pays the taxes, everything. That was an issue in bankruptcy court, Your Honor. That's why they filed a motion for relief. They were saying that he wasn't making those payments. So we had to present evidence to the courts to show that he was making those payments. That's in part why the court denied them their two, well, now three motions for relief. Thank you very much. Thank you, Your Honor.